IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS G. GIBSON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PROGRESSIVE SPECIALTY | : | No. 15-1038 |
| INSURANCE COMPANY, | : | |
| Defendant. | : | |

**MEMORANDUM**

**TIMOTHY R. RICE**                                                                 May 12, 2015
**U.S. MAGISTRATE JUDGE**

      Plaintiff Thomas G. Gibson has filed a complaint alleging that Defendant Progressive Specialty Insurance Company is liable for breach of contract (Count I), bad faith (Count II), and violating the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count III). Progressive moves to dismiss Counts II and III, asserting Gibson cannot prevail as a matter of law. See Motion to Dismiss (doc. 9). Progressive's motion to dismiss is granted in part. Gibson's bad faith claim survives only on his claim that Progressive used a biased peer review organization ("PRO"). All other allegations of bad faith are dismissed. Gibson's UTPCPL claim also is dismissed because he fails to allege any misconduct prohibited by the UTPCPL.

      I may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). I must accept all of the plaintiff's factual allegations and "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Grammer v. John J. Kane Reg'l Centers-Glen Hazel, 570 F.3d 520, 523 (3d Cir. 2009). When the complaint does not state a plausible claim for relief, the motion to dismiss should be granted. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In November 2010, Progressive issued an automobile insurance policy to Gibson for $100,000 in primary coverage and $1,000,000 in excess coverage.  See First Am. Compl. (doc. 7) ¶ 5, Ex. A (Declarations Page).  In December 2010, Gibson was involved in a motor vehicle accident and suffered various injuries.  See First Am. Compl. ¶¶ 6-7.  Gibson sought coverage from Progressive for his medical care and treatment.  Id. ¶¶ 10-12, Ex. C (Health Insurance Claim Forms).

Progressive contracted with MES Solutions to perform a "peer records review" of Gibson's treatment and care.  Id. ¶ 14, Ex. D (8/21/2014 Letter from MES Solutions).  In August 2014, Dr. Lisa M. Nocera reviewed Gibson's records on behalf of MES Solutions and determined that "all treatment, injections and compound medications [received by Gibson] on 1/17/14 and beyond are considered unreasonable and unnecessary for injuries reportedly sustained in the 12/30/10 motor vehicle accident."  Id.  Progressive then notified several of Gibson's medical providers that, based upon the peer review, it was denying payment for treatment on or after January 17, 2014 and seeking reimbursement of money it paid for treatment provided on April 4, 2014.  See id. ¶ 15, Ex. E (Letters to CityLine Pharmacy, New Britain Surgery Center, and Abington Surgical Center).  Progressive also notified another provider that it was denying coverage for a neurosurgical procedure performed on December 17, 2014 because it was unrelated to the accident.  See id. ¶ 15, Ex. E (Letter to Bruno and Salkind, Explanation of Claim Form).

Gibson alleges that Progressive breached its insurance contract by denying coverage for his medical services and is liable for damages as allowed under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S. §§ 1701 et seq. ("MVFRL").  See First Am. Compl. ¶¶ 18-19, 20-22 (Count I).  He further asserts that Progressive acted in bad faith in violation of 42

Pa. C.S. § 8371, by, among other things: (1) using MES Solutions to perform the peer review when it has a financial interest in providing Progressive with a "biased peer review report;" (2) failing to conduct a reasonable investigation; (3) not denying coverage in a reasonable amount of time; (4) not acting in good faith; (5) failing to act in accordance with the policy; and (6) failing to provide a reasonable explanation of benefits. Id. ¶¶ 23-29 (Count II). Gibson also alleges that Progressive violated the UTCPL by failing to promptly offer indemnification and objectively and fairly evaluate his claims. Id. ¶¶ 30-31 (Count III).

I.   Bad Faith Claim

42 Pa. C.S. § 8371 establishes a "separate and independent" cause of action for bad faith claims against insurance companies related to their handling of an insured's claims. See Toy v. Metropolitan Life Ins. Co., 928 A.2d 186, 199-200 (Pa. 2007); Schwartz v. State Farm Ins. Co., No. 96-160, 1996 WL 189839, at *2 (E.D. Pa. April 18, 1996) (citing Serubo v. Home Ins. Co., No. 95-3207, 1995 WL 461274, at *2 (E.D. Pa. Aug. 3, 1995)). If a court finds that an insurer acts in bad faith,[1] the court may: (1) award interest in an amount equal to the prime rate plus 3%; (2) award punitive damages; and (3) assess court costs and attorney fees against the insurer. 42 Pa. C.S. § 8371.

The PMVFRL concerns motor vehicle liability insurance. See 75 Pa. C.S. § 1711. Section 1797 of that Act sets forth a procedure by which an insurer can evaluate the reasonableness of charges for medical care. See id. § 1797; Schwartz, 1996 WL 189839 at *3. An insurer may contract with a PRO "established for the purpose of evaluating treatment and health care services" to determine whether such treatment or services conform to professional

---

[1]   Bad faith generally means a frivolous denial of coverage without any foundation. See Schwartz, 1996 WL 189839 at *2 (citing Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1231 (Pa. Super. 1984)).

standards and are medically necessary.[2]  75 Pa. C.S. § 1797(b)(1).  The insurer, insured, or medical provider may seek reconsideration of the PRO's initial determination within 30 days of the PRO's initial determination.  Id. § 1797(b)(2).  If the PRO determines that a medical provider has provided unnecessary medical treatment, the insurer is not responsible for payment of those services and can seek reimbursement for any payments provided.  Id. § 1797(b)(7).  Alternatively, if the PRO finds that the treatment was medically necessary, the insurer must pay the provider any outstanding amount plus interest at 12% per year, costs, and attorney's fees.  Id. § 1797(b)(5).

Progressive argues that an insured whose claim has been denied based on a PRO determination cannot bring a claim for statutory bad faith because the remedies available under § 8371 conflict with the remedies available under § 1797(b).  I agree there is a conflict in remedies because the bad faith statute allows for interest at the prime rate plus 3%, punitive damages, court costs, and attorney fees, see 42 Pa. C.S. § 8371, whereas the MVFRL provides for interest at 12% plus reasonable attorney's fees.  75 Pa. C.S. § 1798(b).

Further, under the Pennsylvania Rules of Statutory Construction, § 1797(b) must apply here because it is a specific statute limited to motor vehicle liability insurance, while § 8371 applies generally to insurance claims.  See 1 Pa. C.S. § 1933 (when a conflict between two statutory provisions is irreconcilable, the more specific provision must prevail and is constructed as an exception to the more general provision); see also Barnum v. State Farm Mut. Auto. Ins.

---

[2]    If the insured denies coverage without using a PRO, the insured or medical provider can challenge the denial before a court.  75 Pa. C.S. § 1797(b)(c).  If the court finds in favor of the insurer, the insurer is not responsible for paying the provider.  Id. § 1797(b)(7).  However, if the court finds in favor of the insured, the insurer must provide coverage plus interest, costs for the challenge, and attorney's fees.  Id. § 1797(b)(6).  "Conduct considered to be wanton [also] shall be subject to a payment of treble damages to the injured party."  Id. § 1797(b)(4).

Co., 635 A.2d 155, 159 (Pa. Super. 1993) (where insurer "follows the PRO procedure, it cannot be subjected to damages for bad faith" under § 8371), rev'd and remanded on other grounds Barnum v. State Farm Mut. Auto. Ins. Co., 652 A.2d 1319 (Pa. 1994).  Although the Pennsylvania Supreme Court has not yet addressed this issue, the United States Court of Appeals for the Third Circuit has predicted that the Supreme Court would adopt the reasoning in Barnum and limit an insured's remedies to those specified by § 1797(b) where the insurer submitted the claim to a PRO.  See Gemini Physical Therapy and Rehab. Inc. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 67 (3d Cir. 1994). [3]

Recent federal and state decisions have continued to limit an insured to the relief set forth in § 1797(b) when the claim involves an improper denial of first-party medical benefits pursuant to a challenge to the findings of or amount due from the PRO process.  See Perkins v. State Farm Ins. Co., 589 F. Supp. 2d 559, 564 n.2 (M.D. Pa. 2008) (citing cases).  Those courts, however, also have found that an insured is not precluded from seeking damages under § 8371 if he raises bad faith allegations beyond the scope of § 1797(b), such as claims involving contract interpretation or claims that the insurer did not properly invoke or follow the PRO process.  See Schwartz, 1996 WL 189839, at *4 ("Nothing in Barnum or Gemini suggests that a bad faith insurance coverage claim under § 8371 is barred by § 1797 where the peer review process set out in § 1797 . . . is not actually followed."); Perkins, 589 F. Supp. 2d at 564-65 n. 3 (citing cases).  I agree and predict such reasoning would be adopted by the Pennsylvania Supreme Court.

---

[3]   As a diversity case, I must follow Pennsylvania substantive law as set forth by the Pennsylvania Supreme Court.  Kiewit E. Co. v. L & R Const. Co., 44 F.3d 1194, 1201 n.16 (3d Cir. 1995.  Where the Pennsylvania Supreme Court has not decided an issue, I may look to decisions by the lower Pennsylvania courts to predict how the Supreme Court would decide the issue.  Id.

Gibson argues that he has properly brought a statutory bad faith claim because he "alleges facts [in paragraphs 24 and 25 of his First Amended Complaint] which show that the peer review process used by [Progressive] . . . was outside the scope of section 1797." Gibson's Br. (doc. 11) at 10-11. Gibson further contends that he has properly brought a bad faith claim against Progressive based on its denial of expenses related to his December 2014 neurosurgical procedure because that denial was not based on a peer review. See id. at 12.

Paragraph 24 of the First Amended Complaint alleges that Progressive retained MES Solutions in bad faith because MES Solutions has a financial interest in providing biased reports to Progressive and MES Solutions has provided negative reports to Progressive and others to maintain a "steady source of business." First Am. Compl. ¶ 24. Because this claim does not fall within the scope of § 1797(b), it alleges a proper basis for a statutory bad faith claim. See Perkins, 589 F. Supp. 2d at 566 (citing cases that have held that abuse of the PRO process are not within the scope of § 1797 and state a claim under § 8371).

Paragraph 25, however, alleges that Progressive failed to conduct a reasonable investigation, act in a reasonable time and in good faith, fairly evaluate coverage, and explain its decisions. First Am. Compl. ¶ 24. These allegations are essentially a challenge to Progressive's decision to deny first-party benefits and fall within § 1797(b). See Hickey v. Allstate Prop. & Cas. Ins. Co., 722 F. Supp. 2d 609, 614 (M.D. Pa. 2010); Roppa v. Geico Indemnity Co., No. 10-1428, 2010 WL 5600899, *7 (W.D. Pa. Dec. 29, 2010); Perkins, 589 F. Supp. 2d at 566. Gibson cannot seek statutory bad faith damages based on the misconduct alleged in paragraph 25.

Furthermore, although Progressive allegedly denied coverage for Gibson's December 2014 neurosurgical procedure without using a PRO, Gibson is limited to the remedies set forth in § 1797(b)(4) and (6) because such a denial is specifically addressed by those sections. See supra

6

n. 2; Roppa, 2010 WL 5600899 at *7 ("insurer need not utilize a PRO in order to trigger the procedures and remedies under § 1797"). Gibson's statutory bad faith claim is limited to those allegations set forth in paragraph 24 of the First Amended Complaint. All other allegations of statutory bad faith are dismissed.

II. UTPCPL Claim

A consumer may bring a private action under the UTPCPL to recover damages caused by certain enumerated "unfair methods of competition" and "unfair or deceptive acts or practices." 73 P.S. §§ 201-3, 201-2(4), 201-9.2. Although Pennsylvania law permits a consumer to bring an action against an insurer pursuant to the UTPCPL, the action cannot be based on a failure to perform a contractual obligation, such as the failure to pay a claim or a failure to investigate pursuant to the contract. See Nordi v. Keystone Health Plan W. Inc., 989 A.2d 376, 385 (Pa. Super. 2010); Horowitz v. Fed. Kemper Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995) (citing Gordon v. Pa. Blue Shield, 548 A.2d 600, 604 (Pa. Super. 1988)). The UTPCPL claim must be based on misfeasance or negligent conduct. See Nordi, 989 A.2d at 385.

Progressive also argues that such claims must relate to the selling of a policy, rather than the handling of claims pursuant to the policy. See Progressive Br. at 5-7. Progressive relies on a 2008 trial court decision, which precluded a UTPCPL claim based on an insurer's conduct in handling a claim. See Progressive Br. Ex. B, Bodnar v. State Farm Mutual Ins. Co., No. AR08-001337, Memo. Op. 2. The trial court relied on Toy v. Metropolitan Life Insurance Co., 928 A.2d 186 (Pa. 2007), in which the Supreme Court held that the legislature enacted 42 Pa. C.S. § 8371 solely to address an insurer's bad faith handling of claims, not to provide relief "to an insured who alleges his insurer engaged in unfair or deceptive practices in soliciting the purchase [of] a policy." Id. at 200.

7

The trial court reasoned that the Supreme Court in Toy had found that the bad faith statute applied only to the handling of insurance claims because the UTPCPL did not provide a remedy for such claims. Accordingly, it limited the UTPCPL to claims concerning the solicitation of insurance policies, noting that: "[t]he Court appeared to recognize a legislative scheme in which misconduct relating to the selling of a policy is governed by the [UTPCPL] and misconduct related to the handling of claims allegedly due under the policy is governed by the bad faith statute." Ex. B, Memo. Op. at 2.

Gibson alleges only that Progressive breached its contract by denying coverage. See First Am. Compl. ¶ 22. Similarly, the allegations in his UTPCPL claim relate solely to Progressive's refusal to provide coverage or failure to act in some way, rather than misfeasance or improper performance. See id. ¶ 31 ("failing to promptly offer indemnification [and] failing to objectively and fairly evaluate [Gibson's] claims"); see also Hardinger v. Motorists Mut'l Ins. Co., No. 03-115, 2003 WL 21250664, at *2 (E.D. Pa. Feb. 27, 2003) (allegations that insurer "unreasonably withheld policy benefits and asserted denials without reasonable basis" were in essence a challenge to the denial of benefits).

Although Gibson also incorporates the other allegations in his complaint, including his claim that Progressive used a biased PRO, and this claim could be viewed as a type of misfeasance, this claim cannot be brought under the UTPCPL because it relates to Progressive's handling of Gibson's claim, rather than Progressive's solicitation of the policy. Based on Bodnar, I conclude that if the Supreme Court of Pennsylvania was faced with this issue, it would hold that the UTPCPL solely relates to claims concerning the improper sale of a policy and the statutory bad faith act is limited to claims concerning the handling of an insurance claim.

Accordingly, Gibson's UTPCPL claim is dismissed.

An appropriate order follows.